UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

TANYA W.,

                                        Plaintiff,

v.                                                          3:20-CV-510
                                                            (TWD)

COMMISSIONER OF SOCIAL SECURITY,

                                        Defendant.
_____

APPEARANCES:                              OF COUNSEL:

LACHMAN & GORTON                          PETER A. GORTON, ESQ.
Attorneys for Plaintiff
1500 E. Main Street
P.O. Bo 89
Endicott, New York 13761

U.S. SOCIAL SECURITY ADMIN.               MICHAEL L. HENRY, ESQ.
 *Counsel for Defendant*
J.F.K. Federal Building, Room 625
15 New Sudbury Street
Boston, Massachusetts 02203

**THÉRÈSE WILEY DANCKS**, United States Magistrate Judge

<u>**MEMORANDUM-DECISION AND ORDER**</u>

        Plaintiff Tanya W. ("Plaintiff") brings this action pursuant to 42 U.S.C. § 405(g) seeking

judicial review of a final decision of the Commissioner of Social Security ("Defendant" or

"Commissioner") denying her application for Supplemental Security Income ("SSI").  (Dkt. No.

1.)  This case has proceeded in accordance with General Order 18 of this Court which sets forth

the procedures to be followed when appealing a denial of Social Security benefits.  Both parties

have filed briefs, and Plaintiff filed a reply brief with the Court's permission.  (Dkt. Nos. 13, 16,

17-1.)  Oral argument was not heard.  Pursuant to 28 U.S.C. § 636(c), the parties have consented

to the disposition of this case by a Magistrate Judge.  (Dkt. Nos. 4, 6.)  For the reasons discussed

below, the Commissioner's decision denying Plaintiff's disability benefits is affirmed.

## I.   BACKGROUND AND PROCEDURAL HISTORY

Plaintiff was born on August 26, 1981.  (Administrative Transcript at 28.[1])  She left

school in the tenth grade, but subsequently obtained her GED.  (T. 6, 307.)  At the time of her

initial administrative hearing on December 3, 2015, she resided with her three children, ages 16,

13, and 9.  (T. 19.)  Her previous employment included positions as a cashier, teacher's assistant,

and aide to handicapped children, but she had not been employed since 2009.  (T. 6-8, 180-87,

458-59, 620.)

On December 2, 2013, Plaintiff filed an application for SSI, alleging an onset date of

April 1, 2013.  (T. 144-49.)  Plaintiff's application was initially denied on February 25, 2014.

(T. 55-76.)  Thereafter, Plaintiff filed a written request for a hearing, which was held on

December 3, 2015, before Administrative Law Judge ("ALJ") Bruce S. Fein.  (T. 1-25.)  On

January 19, 2016, the ALJ issued a written decision finding Plaintiff was not disabled under the

Social Security Act.  (T. 36-49.)  The Appeals Council denied Plaintiff's request for review on

May 15, 2017.  Plaintiff thereafter commenced a proceeding in the Northern District of New

York.  By a decision dated January 22, 2019, the Honorable Magistrate Judge Christian F.

Hummel, remanded the case to the Commissioner for further administrative proceedings.  (T.

---

[1]  The Administrative Transcript is found at Dkt. No. 12.  Citations to the Administrative
Transcript will be referenced as "T." and the Bates-stamped page numbers as set forth therein
will be used rather than the numbers assigned by the Court's CM/ECF electronic filing system.
Citations not made to the Administrative Transcript will use the page numbers assigned by the
Court's CM/ECF electronic filing system.

499-21.)

On March 13, 2019, the Appeals Council remanded Plaintiff's claim to ALJ Fein for further proceedings.  (T. 446-48.)  On January 7, 2020, he held a hearing at which Plaintiff, Vocational Expert ("VE") Michele Erbacher, and Independent Medical Expert Dr. Irving Kushner testified.  (T. 451-75.)  The ALJ also allowed Plaintiff an opportunity to supplement the administrative record.  (T. 603-06.)  On February 18, 2020, the ALJ again found Plaintiff was not disabled under the Social Security Act.  (T. 424-44.)  In response, Plaintiff commenced this action on May 6, 2020.  (Dkt. No. 1.)

## II.    RELEVANT LEGAL STANDARD

### A.    Standard for Benefits[2]

To be considered disabled, a plaintiff seeking disability benefits must establish he or she is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  In addition, the plaintiff's

> physical or mental impairment or impairments [must be] of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

---

[2] While the Supplemental Security Income program has special economic eligibility requirements, the requirements for establishing disability under Title XVI, 42 U.S.C. § 1382c(a)(3) and Title II, 42 U.S.C. § 423(d), are identical, so "decisions under these sections are cited interchangeably."  *Donato v. Sec'y of Health and Human Servs.*, 721 F.2d 414, 418 n.3 (2d Cir. 1983) (citation omitted).

42 U.S.C. § 1382c(a)(3)(B).

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act. 20 C.F.R. § 404.1520. The Supreme Court has recognized the validity of this sequential evaluation process. *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987). Under the five-step sequential evaluation process, the decision-maker determines:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a "residual functional capacity" assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience.

*McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014). "If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further." *Barnhart v. Thomas*, 540 U.S. 20, 24 (2003).

The plaintiff-claimant bears the burden of proof regarding the first four steps. *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008) (quoting *Perez v. Chater*, 77 F.3d 41, 46 (2d Cir. 1996)). If the plaintiff-claimant meets his or her burden of proof, the burden shifts to the defendant-Commissioner at the fifth step to prove the plaintiff-claimant is capable of working. *Id.*

## B. Scope of Review

In reviewing a final decision of the Commissioner, a court must determine whether the correct legal standards were applied and whether substantial evidence supports the decision.

*Featherly v. Astrue*, 793 F. Supp. 2d 627, 630 (W.D.N.Y. 2011) (citations omitted).  A reviewing

court may not affirm the ALJ's decision if it reasonably doubts whether the proper legal

standards were applied, even if the decision appears to be supported by substantial evidence.

*Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987).

      A court's factual review of the Commissioner's final decision is limited to the

determination of whether there is substantial evidence in the record to support the decision.  42

U.S.C. § 405(g); *Rivera v. Sullivan*, 923 F.2d 964, 967 (2d Cir. 1991).  An ALJ must set forth the

crucial factors justifying his findings with sufficient specificity to allow a court to determine

whether substantial evidence supports the decision.  *Roat v. Barnhart*, 717 F. Supp. 2d 241, 248

(N.D.N.Y. 2010); *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984).  "Substantial evidence"

is evidence amounting to "more than a mere scintilla," and has been defined as "such relevant

evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v.

Perales*, 402 U.S. 389, 401 (1971) (quotation marks and citation omitted).  Where evidence is

deemed susceptible to more than one rational interpretation, the ALJ's conclusion must be

upheld.  *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

      "To determine on appeal whether an ALJ's findings are supported by substantial

evidence, a reviewing court considers the whole record, examining the evidence from both sides,

because an analysis of the substantiality of the evidence must also include that which detracts

from its weight."  *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).  If supported by

substantial evidence, the Commissioner's findings must be sustained "even where substantial

evidence may support the plaintiff's positions and despite that the court's independent analysis

of the evidence may differ from the [Commissioner's]."  *Rosado v. Sullivan*, 805 F. Supp. 147,

153 (S.D.N.Y. 1992).  A reviewing court cannot substitute its interpretation of the administrative

record in place of the Commissioner's if the record contains substantial support for the ALJ's

decision. *Rutherford*, 685 F.2d at 62 (2d Cir. 1982).

C.     **Standards for ALJ Evaluation of Opinion Evidence**

In making a disability determination, the ALJ weighs all the evidence of record and

carefully considers medical source opinions about any issue. SSR 96-5p, 1996 WL 374183, at

*2-3 (1996). Under 20 C.F.R. §§ 404.1527(e) and 416.927(e), some issues are not "medical

issues," but are "administrative findings." The responsibility for determining these issues

belongs to the Commissioner. *See* SSR 96-5p, 1996 WL 374183, at *2. These issues include

whether the plaintiff's impairments meet or equal a listed impairment; the plaintiff's Residual

Functional Capacity ("RFC"); how the vocational factors apply; and whether the plaintiff is

"disabled" under the Act. *Id.*

In evaluating medical opinions on issues reserved to the Commissioner, the ALJ must

apply the factors listed in 20 C.F.R. §§ 404.1527(d) and 416.927(d). The ALJ must clearly state

the legal rules being applied and the weight being accorded to the evidence considered.

*Drysdale v. Colvin*, No. 14-CV-722, 2015 WL 3776382, at *2 (S.D.N.Y. June 16, 2015) (citing

*Rivera v. Astrue*, No. 10 Civ. 4324, 2012 WL 3614323, at *8 (E.D.N.Y. Aug. 21, 2012) (citation

omitted)).

In terms of weighing opinion evidence, the Second Circuit has long recognized the

treating physician rule set out in 20 C.F.R. § 404.1527(c).[3] "Thus, the opinion of a claimant's

---

[3] For claims filed on or after March 27, 2017, a new set of regulations apply. These new
regulations do "not defer or give any specific evidentiary weight, including controlling weight, to
any medical opinion(s)." 20 C.F.R. § 416.920c(a). But since Plaintiff filed her claim on
December 2, 2013, the treating physician rule applies. *See Claudio v. Berryhill*, No. 3:17-CV-
1228 (MPS), 2018 WL 3455409 at *3 n.2 (D. Conn. July 18, 2018) ("Since [the plaintiff] filed
her claim before March 27, 2017, I apply the treating physician rule under the earlier

6

treating physician as to the nature and severity of the impairment is given controlling weight so long as it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." *Greek v. Colvin*, 802 F.3d 370, 375 (2d Cir. 2015) (quoting *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008)). However, there are situations where the treating physician's opinion is not entitled to controlling weight, in which case "the ALJ must explicitly consider, *inter alia*: (1) the frequen[c]y, length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and (4) whether the physician is a specialist." *Greek*, 802 F.3d at 375 (quoting *Selian v. Astrue*, 708 F.3d 409, 418 (2d Cir. 2013)). "Where an ALJ's reasoning and adherence to the Regulations is clear, []he is not required to explicitly go through each and every factor of the Regulation." *Blinkovitch v. Comm'r of Soc. Sec.*, No. 3:15-CV-1196 (GTS/WBC), 2017 WL 782979, at *4 (N.D.N.Y. Jan. 23, 2017) (citing *Atwater v. Astrue*, 512 F. App'x 67, 70 (2d Cir. 2013)), *report-recommendation adopted by* 2017 WL 782901 (N.D.N.Y. Feb. 28, 2017). After considering these factors, the ALJ must "comprehensively set forth [his] reasons for the weight assigned to a treating physician's opinion." *Greek*, 802 F.3d at 375 (quoting *Burgess*, 537 F.3d at 129) (alteration in original). "The failure to provide 'good reasons' for not crediting the opinion of a claimant's treating physician is a ground for remand." *Id.* (quoting *Burgess*, 537 F.3d at 129-30).

The factors for considering opinions from non-treating medical sources are the same as those for assessing treating sources, with the consideration of whether the source examined the claimant replacing the consideration of the treatment relationship between the source and the

regulations.").

claimant.  *See* 20 C.F.R. § 404.1527(c)(1)-(6).  Additionally, when weighing opinions from sources who are not considered "medically acceptable sources" under the regulations, the ALJ must consider the same factors as used for evaluating opinions from medically acceptable sources.  *Saxon v. Astrue*, 781 F. Supp. 2d 92, 104 (N.D.N.Y. 2011) (citing *Canales v. Comm'r of Soc. Sec.*, 698 F. Supp. 2d 335, 344 (E.D.N.Y. 2010)); SSR 06-03p, 2006 WL 2329939.

### D.        Standards for ALJ Evaluation of Symptoms

In evaluating a plaintiff's RFC for work in the national economy, the ALJ must take the plaintiff's reports of pain and other symptoms into account.  *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010).  The ALJ must carefully consider "all the evidence presented by claimants regarding their symptoms, which fall into seven relevant factors including 'daily activities' and the 'location, duration, frequency, and intensity of [their] pain or other symptoms.'"  *Del Carmen Fernandez v. Berryhill*, No. 18-CV-326, 2019 WL 667743, at *9 (S.D.N.Y. Feb. 19, 2019) (citing 20 C.F.R. § 404.1529(c)(3); Social Security Ruling (SSR) 16-3p, *Titles II and XVI: Evaluation of Symptoms in Disability Claims*, 81 FR 14166-01 at 14169-70, 2016 WL 1020935 (Mar. 16, 2016)).

In 2016 the Commissioner eliminated the use of term "credibility" from the "sub-regulatory policy" because the regulations themselves do not use the term.  SSR 16-3p, 81 FR at 14167.  Instead, symptom evaluation tracks the language of the regulations.[4]  The evaluation of symptoms involves a two-step process.  First, the ALJ must determine, based upon the objective

---

[4]  The standard for evaluating subjective symptoms has not changed in the regulations. Rather, the term "credibility" is no longer used, and SSR 16-3p makes it clear the evaluation of the claimant's symptoms is not "an evaluation of the claimant's character." 81 FR at 14167.  The Court will remain consistent with the terms as used by the Commissioner.

medical evidence, whether the medical impairments "could reasonably be expected to produce the pain or other symptoms alleged . . . ."  20 C.F.R. §§ 404.1529(a), (b); 416.929(a), (b).

If so, at the second step, the ALJ must consider "'the extent to which [the claimant's] alleged functional limitations and restrictions due to pain or other symptoms can reasonably be accepted as consistent with the [objective medical evidence] and other evidence to decide how [the claimant's] symptoms affect [her] ability to work.'"  *Barry v. Colvin*, 606 F. App'x 621, 623 (2d Cir. 2015) (citing *inter alia* 20 C.F.R. § 404.1529(a); *Genier v. Astrue*, 606 F.3d at 49) (alterations in original).[5]

If the objective medical evidence does not substantiate the claimant's symptoms, the ALJ must consider the other evidence.  *Cichocki v. Astrue*, 534 F. App'x 71, 76 (2d Cir. 2013) (citing superseded SSR 96-7p).  The ALJ must assess the claimant's subjective complaints by considering the record in light of the following symptom-related factors: (1) claimant's daily activities; (2) location, duration, frequency, and intensity of claimant's symptoms; (3) precipitating and aggravating factors; (4) type, dosage, effectiveness, and side effects of any medication taken to relieve symptoms; (5) other treatment received to relieve symptoms; (6) any measures taken by the claimant to relieve symptoms; and (7) any other factors concerning claimant's functional limitations and restrictions due to symptoms.  20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3).

The ALJ must provide specific reasons for the determination.  *Cichocki*, 534 F. App'x at 76.  However, the failure to specifically reference a particular relevant factor does not undermine

---

[5]  The court in *Barry* also cited SSR 96-7p, 1996 WL 374186, at *2 (July 2, 1996) which was superseded by SSR 16-3p.  As stated above, the factors considered are the same under both rulings.  The 2016 ruling has removed the emphasis on "credibility."

the ALJ's assessment as long as there is substantial evidence supporting the determination.  *Id.*;

*see also Del Carmen Fernandez v. Berryhill*, 2019 WL 667743 at *11 (citing *Rousey v. Comm'r*

*of Soc. Sec.*, 285 F. Supp. 3d 723, 744 (S.D.N.Y. 2018)).  "[R]emand is not required where 'the

evidence of record allows the court to glean the rationale of an ALJ's decision.'"  *Cichocki*, 534

F. App'x at 76 (quoting *Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983)).

## III.    THE ALJ'S FEBRUARY 18, 2020, DECISION

In his February 18, 2020, decision, the ALJ applied the five-step sequential evaluation

promulgated by the Commissioner for adjudicating disability claims.  (T. 428-38.)  First, the ALJ

found Plaintiff had not engaged in substantial gainful activity since her application date of

December 2, 2013.  (T. 429.)  The ALJ next determined Plaintiff had the following severe

impairments: "psoriatic arthritis, lumbosacral degenerative disc disease, post right shoulder

surgery, depressive disorder, and post-traumatic stress disorder."  (T. 429-30.)  The ALJ then

determined Plaintiff does not have an impairment or combination of impairments meeting or

medically equaling one of the listed impairments in 20 C.F.R. § 404, Subpart P, Appendix 1.  (T.

430-32.)

The ALJ next found, based on the above-stated impairments, Plaintiff has the RFC to

perform "sedentary work" with certain limitations, stating:

> She can perform all postural activities on an occasional basis.  She
> can also frequently handle and finger bilaterally.  The claimant
> should work in a low stress job, which is defined as involving
> occasional decision-making, occasional changes in the work
> setting, and occasional use of judgment.

(T. 432.)

Based upon this RFC and the VE testimony, the ALJ determined Plaintiff was not

disabled because there were a significant number of jobs in the national economy she could

perform.  (T. 437.)  Specifically, the ALJ relied upon the VE's testimony to conclude someone of

Plaintiff's "age, education, work experience, and residual functional capacity" could perform the

requirements of representative occupations such as "call out operator," "addressing clerk," and

"charge account clerk."  (*Id*.)  Thus, the ALJ determined Plaintiff has not been under a disability,

as defined in the Social Security Act, since the application date of December 2, 2013.  (T. 438.)

## IV.    THE PARTIES' CONTENTIONS

Plaintiff contends the RFC is not supported by substantial evidence because the ALJ: (1)

fails to comply with the district court's remand order by finding Plaintiff's fibromyalgia was not

a severe impairment; (2) errs in concluding Plaintiff can "frequently" handle and finger; and (3)

errs by finding no limitations with respect to time off-task.  (Dkt. No. 13 at 13-25.)  In response,

the Commissioner contends the ALJ's decision complies with the district court's remand order,

applies the correct legal standards, and is supported by substantial evidence.  (Dkt. No. 16 at 6-

35.)

## V.    THE COURT'S ANALYSIS

### A.    The ALJ Complied with the District Court's Remand Order and His Step Two Determination is Supported by Substantial Evidence

In the ALJ's original disability determination, dated January 19, 2016, he found

Plaintiff's fibromyalgia was a severe impairment at step two.  (T. 38.)  Magistrate Judge

Hummel's January 23, 2019, remand order was predicated on the ALJ's inadequate assessment

of the limitations resulting from Plaintiff's fibromyalgia pain.  (T. 511-14.)  Relying on this

judicial finding, Plaintiff argues Magistrate Judge Hummel's remand order necessarily found

Plaintiff's fibromyalgia to be a severe impairment, and the ALJ was bound to reach the identical

step two determination on remand.  (Dkt. No. 13 at 13.)

In the ALJ's February 18, 2020, disability determination at issue in this case, the ALJ instead found "the record does not contain the evidence necessary for establishing fibromyalgia as a medically determinable impairment." (T. 430.) In reaching this conclusion, the ALJ relied upon the hearing testimony of Dr. Irving Kushner, a rheumatologist and independent medical expert who reviewed Plaintiff's complete medical records, and found her pain and other symptoms were more consistent with psoriatic arthritis, a diagnosis not established by Plaintiff's treating sources until about January 2019. (T. 430, 461-67, 724.) As a result, the ALJ's RFC determination did not analyze the functional limitations fibromyalgia imposed on Plaintiff, and primarily attributed Plaintiff's pain to psoriatic arthritis. (T. 433-36.)

Plaintiff contends this was an oversight by the ALJ and violated both the terms of judicial remand order and the "law of the case" doctrine. This Court disagrees and finds the ALJ's step two determination to be supported by substantial evidence, most of which was not available at the time of the original decision. In the case before Magistrate Judge Hummel, the status of Plaintiff's fibromyalgia as a severe impairment was not directly litigated by the parties.[6] (T. 505.) Nor did Magistrate Judge Hummel's January 22, 2019, Memorandum-Decision and Order include express instructions on how the ALJ should handle Plaintiff's fibromyalgia or other impairments at step two or in the RFC analysis; rather, it merely found the ALJ's RFC analysis insufficient given the nature of fibromyalgia pain. (T. 511-14.) *C.f. Diana P. v. Saul*, No. 3:19-CV-593 (CFH), 2020 WL 3971536, at *7 (N.D.N.Y. July 14, 2020) (remanding where previous

---

[6] In the earlier case, Plaintiff claimed (1) the ALJ erred in failing to include any limitations related to handling; (2) failed to properly account for pain resulting from Plaintiff's fibromyalgia and other impairments; (3) improperly rejected Plaintiff's treating provider's opinion concerning Plaintiff's need to change positions, time off task, and absenteeism; and (4) failed to properly consider any reaching limitations associated with Plaintiff's shoulders, neck, back, and fibromyalgia. (T. 505.)

remanding court held plaintiff's sleep apnea and resulting limitations "should have been considered severe at step two and should have been factored into the RFC finding" but ALJ ignored this instruction).  Despite this, Plaintiff interprets Magistrate Judge Hummel's remand instructions to limit the ALJ's review "to accounting for 'plaintiff's pain associated with her [fibromyalgia.]'"  (Dkt. No. 13 at 14, citing T. 514.)  In Plaintiff's view, the ALJ's February 18, 2020, disability determination exceeded those boundaries, and reached conclusions about Plaintiff's fibromyalgia diagnosis starkly at odds with the facts relevant to Magistrate Judge Hummel's decision.  (*Id.* at 13-15.)

Defendant counters with two arguments.  (Dkt. No. 16 at 6.)  First, the Commissioner points out the Second Circuit has not ruled on whether the law of the case doctrine applies to the social security disability administrative process after judicial remand, despite its application by several district courts.  *See Rorick v. Colvin*, 220 F. Supp. 3d 230, 243 n.12 (N.D.N.Y. 2016) (summarizing cases).  Second, the Commissioner argues, the law of the case doctrine is fundamentally inapplicable to the consideration of social security cases on remand, where the expectation is the ALJ will entertain new evidence and make different findings if warranted, whether or not in the claimant's favor.  (Dkt. No. 16 at 7.)

A brief review of the law of the case doctrine is appropriate.  "The regulation governing agency decisions after remand from federal court provides that '[a]ny issues relating to your claim may be considered by the [ALJ] whether or not they were raised in the administrative proceedings leading to the final decision in your case.'"  *Thompson v. Astrue*, 583 F. Supp. 2d 472, 474 (S.D.N.Y. 2008) (citing 20 C.F.R. § 404.983).  However, the "law of the case doctrine," which typically applies to administrative agencies on remand, "prevents the relitigation of a settled issue in a case and requires courts to adhere to decisions made in earlier proceedings."

*Diana P.*, 2020 WL 3971536, at *6 (quoting *Brachtel v. Apfel*, 132 F.3d 417, 419 (8th Cir. 1997)); *see Gladle v. Astrue*, No. 7:12-CV-284 (NAM), 2013 WL 4543147, at *3 (N.D.N.Y. Aug. 27, 2013) ("ALJs have acknowledged throughout the years that the remand instructions they receive from the federal district court are the law of the case.") (citations omitted).  Further, "district courts have the power to limit the scope of remand by specifying the actions to be taken by the ALJ." *Thompson*, 583 F. Supp. 2d at 475; *see Sullivan v. Hudson*, 490 U.S. 877, 885 (1989) ("[T]he district court's remand order will often include detailed instructions concerning the scope of the remand. . . .  Deviation from the court's remand order in the subsequent administrative proceedings is itself legal error, subject to reversal on further judicial review.").

Based on the foregoing, "in the absence of limiting instructions or court findings, the Commissioner may revisit on remand any issues relating to the application for disability benefits." *Thompson*, 583 F. Supp. 2d at 475.  Indeed, a claimant is free to introduce new evidence to support her disability claim, which the ALJ is bound to evaluate according to the sequential analysis.  *See Marvin v. Colvin*, No. 3:15-cv-74 (GLS/CFH), 2016 WL 2968051, at *3 (N.D.N.Y. May 20, 2016) (explaining an ALJ is not bound by the law of the case when presented with compelling reasons such as new evidence); *see also Ali v. Mukasey*, 529 F.3d 478, 490 (2d Cir. 2008) (noting cogent and compelling reasons for rejecting the law of the case doctrine include "an intervening change in controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice.") (internal quotation marks and citation omitted).

Accordingly, this Court need not resolve the question of whether the law of the case doctrine should apply in social security cases generally because the ALJ's consideration of new medical evidence related to Plaintiff's fibromyalgia, psoriasis, and psoriatic arthritis provides

14

substantial evidence for his disability determination under both Plaintiff's and the Commissioner's favored approach.  This new evidence included treatment notes from 2016 through 2019 showing few documented complaints about or treatment for fibromyalgia pain.  (T. 671, 686, 688, 726.)  Treating source notes from this period indicate Plaintiff was able to stop taking her medications while pregnant, and include multiple medical appointments where Plaintiff reported a pain level of 0/10.  (T. 683, 685, 691, 701.)

Plaintiff's medical records also show a flare up of back and lower body pain on January 21, 2019, coinciding with a psoriasis flare.  (T. 724, 728.)  In July 2019, Plaintiff reported worsening bilateral joint pain in hands at the same time her psoriasis was worsening.  (T. 759.)  Blood tests conducted in July 2019 showed "elevated ESR/CRP," indicative of increased inflammation.  (T. 765.)  In September 2019, Sara Smith, an NP with a specialization in rheumatology, referred Plaintiff for an MRI to confirm the presence of sacroiliitis.[7]  (T. 459, 769.)  In a December 26, 2019, opinion, NP Smith diagnosed Plaintiff with both psoriatic arthritis and fibromyalgia.  (T. 793.)

The ALJ did not apply his lay opinion to these new medical records.  Rather, the ALJ relied upon an independent medical expert, Dr. Irving Kushner, a rheumatologist who testified at Plaintiff's January 7, 2020, hearing. (T.  461-467.)  According to Dr. Kushner's testimony, he had reviewed Plaintiff's full medical record.  (T. 462, 466.)  In his opinion, the medical record did not support a diagnosis of fibromyalgia.  (T. 463-64.)  Rather, Dr. Kushner opined Plaintiff's joint pain symptoms were consistent with the type of inflammatory arthritis typically

---

[7] Sacroiliitis is inflammation of the sacroiliac joints, located where the lower spine and pelvis connect, typically causing pain in the lower back and legs. https://www.mayoclinic.org/diseases-conditions/sacroiliitis/symptoms-causes/syc-20350747 (last visited Oct. 22, 2021).

accompanying psoriasis.  (T. 462-63.)  He also noted Plaintiff's complaints of "chronic sacroiliac

pain" were consistent with a diagnosis of psoriatic arthritis.  (T. 463, 769.)  Dr. Kushner also

discussed Plaintiff's diagnosis of obstructive sleep apnea and testified this condition frequently

results in "the kind of symptoms that are associated with fibromyalgia."  (T. 464.)

Accordingly, the ALJ marshalled substantial new evidence to support his step two

determination to included Plaintiff's psoriatic arthritis as a severe impairment and excluded

fibromyalgia due to insufficient evidence to suggest it rose to the level of a medically

determinable impairment.  Therefore, even if the law of the case doctrine were found to apply to

social security cases, the ALJ's determination would fall squarely within the "new evidence"

exception.  *See Marvin v. Colvin*, 2016 WL 2968051, at *3; *see also* SSR 12-2p: Titles II and

XVI: Evaluation of Fibromyalgia, 2012 WL 3104869, at *2 (requiring ALJs to consider whether

a physician's fibromyalgia diagnosis "is not inconsistent with the other evidence in the person's

case record.").  Accordingly, the ALJ's step two determination is supported by substantial

evidence.

**B.**     **Substantial Evidence Supports the ALJ's Analysis of the Record Evidence and Plaintiff's RFC**

A claimant's RFC is the most she can do despite her limitations.  20 C.F.R. §

404.1545(a)(1).  "Ordinarily, RFC is the individual's maximum remaining ability to do sustained

work activities in an ordinary work setting on a regular and continuing basis.  A regular and

continuing basis means eight hours a day, for five days a week, or an equivalent work schedule."

*Pardee v. Astrue*, 631 F. Supp. 2d 200, 210 (N.D.N.Y. 2009) (citing *Melville v. Apfel*, 198 F.3d

45 52 (2d Cir. 1999)).  "In making a [RFC] determination, the ALJ must consider a claimant's

physical abilities, mental abilities, symptomology, including pain and other limitations which

could interfere with work activities on a regular and continuing basis." *Id*. (citing 20 C.F.R. § 404.1545(a)).  "Ultimately, '[a]ny impairment-related limitations created by an individual's response to demands of work . . . must be reflected in the RFC assessment.'" *Hendrickson v. Astrue*, No. 11-CV-0927 (ESH), 2012 WL 7784156, at *3 (N.D.N.Y. Dec. 11, 2012) (quoting SSR 85-15, 1985 WL 56857, at *8).  The RFC determination "must be set forth with sufficient specificity to enable [the Court] to decide whether the determination is supported by substantial evidence." *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984).

It is the province of the ALJ to resolve genuine conflicts in the record.  *Veino v. Barnhart*, 312 F.3d at 588.  However, the Commissioner need not "reconcile explicitly every shred of medical testimony." *Galiotti v. Astrue*, 266 F. App'x 66, 66 (2d Cir. 2008) (citing *Fiorello v. Heckler*, 725 F.2d 174, 176 (2d Cir. 1983)).  Here, the ALJ resolved conflicts between the various medical opinions by assigning the greatest weight to those portions of the medical opinions deemed most consistent with Plaintiff's overall treatment record and activities. In doing so, the ALJ appropriately evaluated the conflicting medical evidence, and made an RFC finding consistent with the overall record.  *See Matta v. Astrue*, 508 F. App'x. 53, 56 (2d Cir. 2013) (although ALJ's conclusion did not perfectly correspond with any of the opinions of medical sources, ALJ was entitled to weigh all of the evidence available to make an RFC finding consistent with the record as a whole).  Considering the ALJ's detailed analysis of Plaintiff's medical history, the relevant medical opinions, Plaintiff's testimony, and her activities of daily living, this Court concludes the RFC determination was supported by substantial evidence, as summarized below.[8]

---

[8] The ALJ's RFC determination includes an extensive discussion of opinion evidence including the February 6, 2014, psychiatric consultative opinion of Dr. Cheryl Loomis, the

### 1.    Plaintiff's Hands and Manipulative Limitations

"Handling" involves "[s]eizing, holding, grasping, turning or otherwise working with hand or hands."  *Olmeda v. Barnhart*, No. 04 Civ. 5456, 2006 WL 2255003, at *5, n.11 (S.D.N.Y. Aug. 1, 2006) (citation omitted).  With regard to "handling," "[f]ingers are involved only to the extent that they are an extension of the hand, such as to turn a switch. . . ."  *Id.*  "Fingering" means "[p]icking, pinching, or otherwise working primarily with fingers rather than with the whole hand or arm as in handling."  *Id.*  "Frequent" is defined under the regulations as occurring from one-third to two-thirds of the time, while "occasional" refers to activity occurring up to one-third of the time.  SSR 83-10; *Castle v. Comm'r of Soc. Sec.*, No. 1:13-cv-543 (GLS), 2014 WL 2215759, at *2, n.6 (N.D.N.Y. May 29, 2014).

The ALJ considered Plaintiff's manipulative limitations as part of his RFC analysis.  He first reviewed the consultative examination report prepared by Dr. Rita Figueroa on February 14, 2014.  (T. 433-34.)  During her examination of Plaintiff, Dr. Figueroa observed full range of motion in the wrist, with a positive Tinel's test and a negative Phalen's test.[9]  Her hand and

---

February 14, 2014, consultative opinion of Dr. Rita Figueroa, the December 2, 2015, opinion of NP Kelly Miller, the February 3, 2016, addendum to the opinion of NP Miller, the February 24, 2016, opinion of NP Sheila Robbins, the December 26, 2019, opinion of NP Sara Smith, as well as multiple assessments performed for the Broome County Department of Social Services and a third party statement from Plaintiff's fiancé.  (T. 433-36.)  Rather than summarize each of those opinions at the outset, this Court will address each of those opinions as relevant to each of Plaintiff's discrete challenges to the ALJ's decision.

[9]  In a Tinel's sign test, the examiner taps on the inside of the patient's wrist over the median nerve.  If the patient feels tingling or numbness in the hand, the test is considered positive for nerve damage.  In a Phalen's sign test, the patient holds her arms in front of her and flexes her wrists, letting the hands hang down for about sixty seconds.  If the patient feels tingling, numbness or pain in the fingers, she may have carpal tunnel syndrome. https://www.webmd.com/pain-management/carpal-tunnel/what-is-tinel-sign (last visited Oct. 22, 2021).

finger dexterity were intact, and she showed full grip strength bilaterally, but Plaintiff complained about weakness in her hands and repeated dropping of small items, such as cigarettes. (T. 314, 316-17.) Plaintiff had carpal tunnel release surgery performed on her right wrist in August 2013, and her left wrist in October 2013. (T. 245, 251, 303, 314.) In Dr. Figueroa's opinion, Plaintiff's continued difficulty in handling objects were attributable to ongoing recovery from this recent surgery. (T. 317.)

The ALJ also considered two opinion forms completed by NP Kelly Miller. (T. 415, 434, 640.) On December 2, 2015, NP Miller completed a check-box form indicating Plaintiff was limited to walking or standing for up to two hours total during the day. (T. 415.) She opined Plaintiff had no time limitations with regard to sitting, but would require a job allowing her to change positions every twenty to thirty minutes. (*Id.*) She further opined Plaintiff could lift and carry no more than nine pounds at one time. (*Id.*) The form included a list of other potential functional limitations, including limitations on the use of the left and right hand. (*Id.*) NP Miller left all of these check-boxes blank. (*Id.*)

On February 3, 2016, NP Miller completed an "Addendum" to her previous opinion. (T. 640.) Again utilizing a check-box form, NP Miller opined Plaintiff could only perform fine motor activity with her right or left hand up to one-third of the workday, or an occasional basis. (*Id.*) She also opined Plaintiff could perform reaching and handling bilaterally up to one-third of the workday. (*Id.*)

The ALJ also considered Dr. Kushner's testimony opining Plaintiff could still perform hand functioning, but not for the entire workday. (T. 434.) Specifically, Dr. Kushner opined Plaintiff's psoriatic arthritis would result in bilateral "diminished hand functioning" and prevent "using one's hands effectively over the course of an entire day." (T. 465.) He cautioned "the

exact limitation" was not apparent, but clarified upon questioning from the ALJ it "would be fair to say that [Plaintiff] can perform the hand function, but it might not be throughout the entirety of the whole day." (*Id.*) Dr. Kushner did not identify any reaching limitations in his testimony. (*Id.*)

The ALJ assigned "each of these assessments at least some weight and from them conclude the claimant is capable of frequently handling and fingering bilaterally." (T. 434.) He noted he had assigned the least weight to NP Miller's opinion because it did not come from an acceptable medical source and because the form opinion lacked a narrative to either support the opinion or to explain the apparent deterioration in Plaintiff's ability to use her hands between December 2015 and February 2016. (*Id.*) Both of these are valid grounds for discounting a medical opinion. *See Genier v. Astrue*, 298 F. App'x 105, 108 (2d Cir. 2008) ("[W]hile the ALJ is certainly free to consider the opinions of [a nurse practitioner] in making his overall assessment of a claimant's impairments and residual abilities, those opinions do not demand the same deference as those of a treating physician."); *Kristen B. v. Comm'r of Soc. Sec.*, 5:20-CV-0032 (ML), 2021 WL 950509, at *9 (N.D.N.Y. Mar. 12, 2021) (citing *Mix v. Astrue*, 09-CV-0016, 2010 WL 2545775, at *5 (W.D.N.Y. June 8, 2010) ("[f]orm reports in which a physician's obligation is only to check a box or fill in a blank are weak evidence at best.")).

He also found frequent handling to be more consistent with the relevant medical evidence, particularly Dr. Figueroa's consultative examination, as well as NP Miller's 2015 examination notes depicting "normal" shoulder and hand functioning, and 2019 notes depicting only "mild pain" with range of motion. (T. 316-17, 356, 362, 366, 761, 768.) The ALJ also considered a July 2019 x-ray reviewed by Dr. Andrew Goldschmidt, who found Plaintiff's hands to exhibit "mild" periarticular osteopenia, a thinning of bone density "which may suggest early

rheumatoid arthritis."  (T. 316-17, 773.)

In addition, the ALJ considered Plaintiff's December 3, 2015, testimony describing her hands and wrists as "pretty good" following surgery to address the carpal tunnel syndrome, aside from "a little bit of pain" when the weather changes.  (T. 22-23.)  Plaintiff also testified she had difficulty lifting everyday items such as a gallon of milk, but attributed this to spine, hip, and shoulder pain rather than any difficulty with her hands.  (T. 14.)

It is apparent from the ALJ's decision he relied on the record as a whole, including opinion evidence, testimony, and objective medical evidence to make his RFC determination regarding Plaintiff's ability to frequently handle, finger, and feel, even if it did not mirror a specific medical opinion.  *See Matta*, 508 F. App'x at 56; *Augusta v. Comm'r of Soc. Sec.*, 1:16-CV-310 (GTS/WBC), 2017 WL 1532585, at \*5 (N.D.N.Y. Apr. 27, 2017) (finding ALJ's determination related to plaintiff's ability to handle, finger, and feel with his hands was supported by the consultative examiner's opinion, objective medical evidence, and plaintiff's testimony); *Hass v. Comm'r of Soc. Sec.*, No. 5:14-CV-730 (DNH), 2015 WL 9274998, at \*3 (N.D.N.Y. Dec. 18, 2015) (ALJ had substantial evidence to discount restrictive opinion from physical therapist where overall medical record supported finding plaintiff could perform frequent reaching, handling, and fingering).  Therefore, the ALJ's RFC determination in this functional area was supported by substantial evidence in the record.

### 2.      Time Off-Task/Absenteeism

As discussed above, NP Miller opined Plaintiff would require the ability to change positions on a regular basis during the workday, would be off-task between ten percent and fifteen percent of the workday, and was likely to miss two days per month due to her physical impairments and the medications associated with those conditions.  (T. 416.)  In NP Miller's

opinion, the combination of impairments and side effects resulted in pain, fatigue, diminished

concentration, diminished work pace, and a need to rest at work.  (*Id.*)  On December 26, 2019,

NP Smith opined Plaintiff's diagnosed psoriatic arthritis and fibromyalgia would cause pain and

fatigue resulting in diminished concentration and work pace sufficient to force Plaintiff to be off-

task more than one-third of the workday, and to miss four days of work per month.  (*Id.*)

Plaintiff contends the ALJ improperly dismissed these treating source opinions in his

RFC determination; however, the ALJ's decision demonstrates substantial evidence to support

his conclusion regarding time off-task and absenteeism.[10]  (T. 434-435.)  For example, Dr.

Kushner, a rheumatologist, testified the only documented impairment resulting from Plaintiff's

joint pain was "mild" difficulty using her hands, but he did not identify anything to lead the ALJ

to reasonably conclude Plaintiff would be significantly off-task during the workday or miss work

on a regular basis.  (T. 465.)

Although Dr. Kushner was not questioned specifically about time off-task and

absenteeism, he was asked the broad question, "[W]ith the psoriatic arthritis, what functional

limitations would be expected to result from that impairment?"  (T. 464.)  Plaintiff correctly

notes a physician's "silence" on a particular limitation is not evidence of his or her opinion that

the limitation does not exist.  *See, e.g.*, *Hawley v. Colvin*, No. 3:13-CV-397 (GLS/ESH), 2014

WL 4107967, at *3 (N.D.N.Y. July 8, 2014).  However, this line of cases addressed a physician's

written report, and is thus inapplicable to the open-ended questioning of Dr. Kushner, who

---

[10]  Plaintiff notes Magistrate Judge Hummel made a similar finding regarding a lack of substantial evidence to support the ALJ's January 16, 2016, decision, but the ALJ did not then have the new evidence of Dr. Kushner's opinion as well as the new medical evidence suggesting Plaintiff's physical impairments were connected to her psoriasis, rather than fibromyalgia.  (T. 515-17.)

clearly had an opportunity to explain his opinion on the full scope of Plaintiff's limitations, and offered specific findings excluding any concerns regarding time off-task or absenteeism.[11]

The ALJ also considered new evidence, provided after remand, supportive of Dr. Kushner's opinion regarding time off-task and absenteeism.  This new evidence suggested the functional limitations from Plaintiff's joint pain tended to coincide with flares of her psoriasis and showed a gap of several years without active treatment from her rheumatologist.  (T. 724, 728.)  He also considered the consultative examination report of Dr. Figueroa, depicting Plaintiff with a normal gait, the ability to walk on heels and toes without difficulty, and no need for assistance rising from a chair or getting on and off the examination table.  (T. 316.)  Such findings are inconsistent with the more restrictive physical limitations described in the Smith and Miller opinions.

In addition, the ALJ considered Plaintiff's self-reported activities of daily living, including cooking, cleaning, and laundry, shopping, driving, and using public transportation, as a factor in his RFC determination.  (T. 172, 309, 315.)  The ALJ also considered Plaintiff's role as primary caregiver for three children at the time of her application, as well as an infant born while the application was pending.  (T. 19, 172. 440.)  The ALJ is entitled to consider the Plaintiff's daily activities in this limited manner.  *See Medina v. Comm'r of Soc. Sec.*, 831 F. App'x 35, 36 (2d Cir. 2020) (allowing ALJ to consider daily activities in determining consistency with alleged symptoms); *Natasha D. v. Comm'r of Soc. Sec.*, 3:19-CV-515 (ATB), 2020 WL 1862966, at *9

---

[11] Because the Court finds the ALJ properly considered Dr. Kushner's opinion, the restrictive opinions from NP Miller and NP Smith were not "undisputed."  Thus, this Court need not resolve the parties' dispute regarding whether the "overwhelmingly compelling" standard applies.  *See Tamara M. v. Saul*, No. 19-CV-1138 (CFH), 2021 WL 1198359, at *8 n.8 (N.D.N.Y. Mar. 30, 2021) (holding the "overwhelmingly compelling" standard did not apply where the treating source opinions were contradicted by other medical opinions in the record).

(N.D.N.Y. Apr. 13, 2020) (ALJ properly considered the plaintiff's testimony about preparing her child for school each morning and taking her to Girl Scout meetings without assistance); *Herrington v. Berryhill*, No. 3:18-CV-315, 2019 WL 1091385, at *7 (D. Conn. Mar. 8, 2019) (activities of daily living, including childcare, are appropriate factors for an ALJ to consider when assessing a plaintiff's claimed symptoms and limitations).

At best, Plaintiff's challenge to the ALJ's determination regarding time off-task and likely absenteeism are premised upon a disagreement over how the ALJ resolved arguably conflicting evidence about Plaintiff's functional limitations.  This Court will not reweigh the evidence presented to the ALJ.  *See Warren v. Comm'r of Soc. Sec.*, No. 3:15-CV-1185 (GTS/WBC), 2016 WL 7223338, at *9 (N.D.N.Y. Nov. 18, 2016) ("When applying the substantial evidence test to a finding that a plaintiff was not disabled, the Court 'will not reweigh the evidence presented at the administrative hearing, . . . nor will it determine whether [the applicant] actually was disabled.  [Rather], [a]bsent an error of law by the Secretary, [a] court must affirm her decision if there is substantial evidence [in the record] to support it.'") (quoting *Lefford v. McCall*, 916 F. Supp. 150, 155 (N.D.N.Y. 1996) (alteration in original)), *report-recommendation adopted by* 2016 WL 7238947 (N.D.N.Y. Dec. 13, 2016); *Vincent v. Shalala*, 830 F. Supp. 126, 133 (N.D.N.Y. 1993) ("[I]t is not the function of the reviewing court to reweigh the evidence.") (citing *Carroll v. Sec'y of Health and Human Servs.*, 705 F.2d 638, 642 (2d Cir. 1983)).  Accordingly, the Court finds the ALJ's RFC determination to be supported by substantial evidence.

### C.    Substantial Evidence Supports the ALJ's Step Five Determination

At step five, the burden shifts to the Commissioner "to show there is other work that [the claimant] can perform."  *McIntyre*, 758 F.3d at 150 (quoting *Brault v. Soc. Sec. Admin.*, 683 F.3d

443, 445 (2d Cir. 2012)).  "If a claimant has non-exertional limitations that 'significantly limit the range of work permitted by his exertional limitations,' the ALJ is required to consult with a vocational expert."  *Zabala v. Astrue*, 595 F.3d 402, 410 (2d Cir. 2010) (quoting *Bapp v. Bowen*, 802 F.2d 601, 605 (2d Cir. 1986)).

If the ALJ utilizes a VE at the hearing, the VE is generally questioned using a hypothetical question incorporating the plaintiff's limitations.  *See Aubeuf v. Schweiker*, 649 F.2d 107, 114 (2d Cir. 1981).  The ALJ may rely on a VE's testimony regarding the availability of work as long as the hypothetical facts the expert is asked to consider are based on substantial evidence and accurately reflect the plaintiff's limitations.  *Calabrese v. Astrue*, 358 F. App'x 274, 276 (2d Cir. 2009).  Where the hypothetical is based on an ALJ's RFC analysis which is supported by substantial facts, the hypothetical is proper.  *Id*. at 276-77.

As discussed above, VE Michele Erbacher testified at the January 7, 2020, hearing than an individual with an RFC matching Plaintiff's could perform the representative occupations of call out operator, addressing clerk, and charge account clerk.  (T. 467-473.)  Because this Court has found the ALJ's RFC determination was supported by substantial evidence, it also finds the ALJ's hypothetical to VE Erbacher was proper, and his step five determination was supported by substantial evidence.

Based on the foregoing, the ALJ's decision was based upon correct legal standards, and substantial evidence supports his determination Plaintiff was not under a disability within the meaning of the SSA.  20 C.F.R. § 404.1520(g).

**WHEREFORE**, it is hereby

**ORDERED** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 13) is **DENIED**; and it is further

  **ORDERED** that Defendant's motion for judgment on the pleadings (Dkt. No. 16) is

**GRANTED**; and it is further

  **ORDERED** that Defendant's decision denying Plaintiff disability benefits is

**AFFIRMED**, and it is further

  **ORDERED** that Plaintiff's complaint (Dkt. No. 1) is **DISMISSED**.


Dated: October 22, 2021
   Syracuse, New York

             Thérèse Wiley Dancks
             United States Magistrate Judge